UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SABRINA ARMSTRONG,
on behalf of A.L.J.,[1]

      Plaintiff,                 Civil Action No. 19-12687
                                         Honorable Sean F. Cox
              v.              Magistrate Judge Elizabeth A. Stafford

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY, [2]

      Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 12]

Plaintiff Sabrina Armstrong, on behalf of her minor granddaughter,

A.J.,[3] appeals a final decision of Defendant Commissioner of Social

Security (Commissioner) denying A.J.'s application for supplemental

security income benefits (SSI) under the Social Security Act.  Both parties

have filed summary judgment motions, referred to this Court for a report

_____

[1] To avoid confusion with the abbreviation for administrative law judge, the initials A.J. will be used to refer to the minor claimant.

[2] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

[3] Armstrong is A.J.'s legal guardian. [ECF No. 9, PageID.38].

and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is not supported by substantial evidence, and thus **RECOMMENDS** that:

- Armstrong's motion [ECF No. 11] be **GRANTED**;

- the Commissioner's motion [ECF No. 12] be **DENIED**; and

- the matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

## I.     BACKGROUND

### A.     A.J.'s Background and Disability Application

Born January 14, 2016, A.J. was 21 months old when Armstrong filed an application for disability benefits on October 17, 2017.  [ECF No. 9, PageID.38].  Armstrong alleged that A.J. was disabled by development delay, speech issues, ADHD, seizure issues and possible autism and that the onset date was January 14, 2016.  [*Id.*, PageID.92].  After a hearing during which Armstrong testified, the ALJ found that A.J. was not disabled in an April 2019 written decision.  [*Id.*, PageID.38-91].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Armstrong timely filed for judicial review.  [*Id.*, PageID.29-31; ECF No. 1].

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner determines whether a child is disabled by analyzing three sequential steps: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has any "severe" impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings).  *See* 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a claimant's impairments on six behavioral domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.  *Barnett*, 573 F. App'x at 464; 20 C.F.R. § 416.926a(b)(1).  A claimant's impairments "functionally equal the listings" if they result in "'marked' limitations in two domains" or

3

"an 'extreme' limitation in one domain."  § 416.926a(a).

Applying this framework, the ALJ concluded that A.J. was not disabled.  At the first step, she found that A.J. had not engaged in substantial gainful activity since the application date.  [ECF No. 9, PageID.41].  Next, the ALJ determined that A.J. had the severe impairments of global developmental delay affecting particularly expressive language, attention deficit hyperactivity disorder (ADHD), and recurrent ear infections, status post bilateral myringotomies with tube placements.  [*Id.*].  At the third step, he concluded that A.J.'s impairment did not meet, medically equal, or functionally equal the severity of the listed impairments.  [*Id.*, PageID.42].

In assessing the six functional equivalence domains, the ALJ found that A.J. had a marked limitation in interacting and relating with others; less than marked limitation in acquiring and using information, attending and completing tasks, her abilities to care for herself and health and physical well-being; and no limitation in her ability to move about and manipulate objects.  [*Id.*, PageID.44-50].  A.J. was thus found not disabled.  [*Id.,* PageID.50].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether

4

the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

Armstrong argues that the ALJ erred by not articulating the persuasiveness of medical opinions suggesting that A.J. has a marked or even extreme limitation in the domain of attending and completing tasks, and a marked limitation in acquiring and using information.  20 C.F.R. § 416.920c. She also argues that the ALJ's findings of less than marked limitations in these functional equivalence domains were not supported by substantial evidence.  A marked limitation in either of these domains, coupled with the documented marked limitation in interacting and relating with others, would result in a finding of functional equivalency, requiring remand.  § 416.926a(a).  The Court agrees that remand is necessary because the ALJ's decision failed to adequately evaluate the persuasiveness of the medical sources' opinions and because evidence the ALJ did not discuss raises serious doubts about the supportability of her

5

overall conclusions.

## A.

Under a longstanding rule, ALJs had been required to defer to the opinions of treating physicians.[4]  But because Armstrong filed A.J.'s application after March 27, 2017, this case is controlled by a new regulation for evaluating medical opinions.  § 416.920c.  The new regulation says, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even those from treating medical sources.  § 416.920c(a); *see also Wilcoxson v. Saul,* 2020 WL 3097081, at *5 (W.D. Ky. June 10, 2020). ALJs now must evaluate the "persuasiveness" of medical opinions by considering five factors:  supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict a medical opinion."  § 416.920c(c)(1)-(5).  The "other factors" include the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  § 416.920c(c)(5).

---

[4] The "treating physician rule" required an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.

The most important factors are supportability and consistency; ALJs must explain how they considered these factors for evaluating the persuasiveness of the medical source's opinion. § 416.920c(a) and (b)(2). *See also Powell v. Saul*, No. 4:19-CV-00127-HBB, 2020 WL 1918095, at *4 (W.D. Ky. Apr. 20, 2020) ("The regulations require administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion."). To apply the supportability factor, the ALJ must measure the extent to which the opinion is supported by relevant objective evidence and supporting explanations. § 416.920c(c)(1). The consistency factor addresses how consistent the opinion is with other evidence in the record. § 416.920c(c)(2).

ALJs may explain their consideration of the remaining factors—the treatment or examining relationship, specialization and other factors—but generally are not required to do so. § 416.920c(b)(2); *see also Shaw v. Saul*, 2020 WL 3072072, at *4 (D.N.H. June 10, 2020) ("Although the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision the ALJ is . . . only required to discuss application of the supportability and consistency factors."). But if contrary medical opinions are equally persuasive in terms

7

of both supportability and consistency, the ALJ must then articulate the relative persuasiveness under the remaining factors. § 416.920c(b)(3).

Armstrong argues that the ALJ did not discuss the persuasiveness of the findings of A.J.'s evaluating neurologist Jules Constantinou, M.D., or that of evaluating neuropsychologists Maggie Gindlesperger, Psy.D. and Firoza Van Horn, Psy.D.  The Commissioner counters that, under the revised regulations, there are no "medical opinions" from those sources in the record.

Before addressing Armstrong's specific arguments, the Court notes that the ALJ's articulation of the supportability and consistency of medical opinions was scant.  After noting that treating physician's opinions were no longer given controlling weight, the ALJ wrote, "The prior administrative medical findings from Ms. [Michelle] Bridges and Dr. [Paul] Liu are persuasive because they are generally supported by and consistent with the evidence in the record as a whole, which includes the recent questionnaire completed by Ms. [Angela] Shultz."  [ECF No. 9, PageID.44]. This is all that the ALJ said about the persuasiveness of medical opinions in the record.

The adequacy of the ALJ's persuasiveness analysis turns in part on whether statements from other medical sources in the record qualify as

8

"medical opinions."  For applications filed on behalf of a child after March 27, 2017, like this one, a "medical opinion" is a statement "from a medical source about what [the child] can still do despite [her] impairment(s) and whether [she has] one or more impairments-related limitations or restrictions in the abilities . . . in the six domains of functioning." § 416.913(a)(2)(ii). [5]  Excluded from the definition of "medical opinions" are "judgments about the nature and severity of [a claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis," which are considered "other medical evidence."  § 416.913(a)(3).

The Commissioner contends that Armstrong failed to identify any statement from the medical sources that are about A.J.'s impairment-related limitations under the six domains of functioning.  [ECF No. 12, PageID.996-997].  It is true that the findings of the evaluating medical sources do not delineate A.J.'s limitations under the rubric of the six domains of functioning, but the Commissioner cites no authority that

---

[5] For claims filed before March 27, 2017, "medical opinions" were defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the] symptoms, diagnosis, prognosis, what [she] can do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).

requires a medical opinion to do so.  The reports of Drs. Constantinou and Gindlesperger, among others, identify functions A.J. can and cannot do, and detail limitations she has with the behaviors, abilities and accomplishments described within the six functional domains.  These reports thus include medical source statements that fall within definition of "medical opinions" under § 416.913(a)(2)(ii).

For example, under the acquiring and using information domain, children ages one to three are expected to refer to themselves and objects by pointing and eventually naming them, and to learn through imitation, constructive play (e.g. building with blocks) and pretend play activities.  20 C.F.R. § 416.926a(g)(2)(ii).  They should also be able to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions.  *Id.*  Similarly, under the attending and completing tasks domain, children aged one to three should be able "to attend to things that interest [them] and have adequate attention to complete some tasks by [themselves]." § 416.926a(h)(2)(ii).  Deficiencies in attending and completing tasks can be shown when a child is "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; is slow to focus on or fails to complete activities of interest (such as games or art projects);

10

repeatedly becomes sidetracked from activities or frequently interrupts others; is easily frustrated and gives up on tasks, including ones the child is capable of completing; and requires extra supervision to stay engaged in an activity.  § 416.926a(h)(3).

Dr. Constantinou evaluated A.J. in October 2017 and in January 2018, when she was 21 and 24 months old.  He found that A.J.'s "figure skills" were at a 12 month level and that she did not stack blocks.  [*Id.,* PageID.143-144].  Both her expressive and receptive language were at about a 15-18 month level; she used roughly ten words with consistency.  [*Id.*].  She could say her name and point to her eyes, nose and teeth, but her nonverbal communication was impaired.  [*Id.*, PageID.143-144].  A.J. could signal wanting "more" and give "high fives," but did not point to indicate needs.  [*Id.*].  Pretend and symbolic play remained relatively sparse.  [*Id.*].  Dr. Constantinou also reported that A.J. was very difficult to engage, that she roamed and paced constantly, and escaped the office.  [*Id.*, PageID.146].  He found her to be alert and oriented, but that her attention span was impaired.  [*Id.*]

Dr. Gindlesperger also concluded that A.J. had significant deficits in her communication impacting her day-to-day functioning at home and at school.  [*Id.*, PageID.152].  A.J. was noted to imitate and play with toys in a

11

functional manner, but was unable to pretend a wood block was a cup to drink from. [*Id.*, PageID.151]. Dr. Gindlesperger reported that A.J. did not speak in full sentences, had difficulty answering simple questions but can follow simple directions. [*Id.*, PageID.150]. She also noted that A.J.'s listening response was poor when she was engaged in an activity such that it took several attempts to illicit a response. [*Id.*, PageID.151]. She demonstrated average age-appropriate abilities to start and finish tasks, follow limits and make appropriate choices. [*Id.*, PageID.152].

A.J.'s speech therapist, Maggie Schneider, MA, CCC-SLP, reported in March 2018 that A.J. did not follow one step commands in play, nor respond to "commands to come here, sit down or give." [ECF No. 9, PageID.394]. A.J. failed to meet a goal of using ten signs, words, or word approximations to request, comment or negate in a 30-minute treatment session, and she did not participate in pretend play spontaneously. [*Id.*]. Michelle Sova, OTRL, who assessed A.J. as part of her Early On evaluation for the school district, reported that she had difficulty attending to the task presented to her and would attempt it only once before quickly moving to the next task. [*Id.*, PageID.230].

These findings from acceptable medical sources[6] are properly

---

[6] A qualified speech pathologist is an acceptable medical source for

construed as medical opinions as defined by the regulation because they
specifically address how A.J.'s impairments (global development delay)
limit certain components of the acquiring and using information domain
(e.g. abilities to point, engage in constructive and pretend play activities,
produce words and sentences, and respond to instructions and questions)
and the attending and completing tasks domain. The ALJ's decision is
devoid of any discussion of the supportability and consistency factors of
these opinions, which is required by the applicable regulation.[7]
§ 416.920c(b)(2); *see also Shaw*, 2020 WL 3072072, at *4. Remand is
thus appropriate.

**B.**

Even if the reports of Drs. Constantinou and Gindlesperger and the
other acceptable medical sources were not "medical opinions," they would
still be "other medical evidence" that must be considered by the ALJ. *See*
§ 416.929(c)(2). Armstrong argues that the ALJ's failure to discuss these
professional evaluations, and others, denotes a lack substantial evidence
supporting the decision. The Court agrees.

---

speech and language impairments. 20 C.F.R. § 416.902(a)(5).
[7] Indeed, the ALJ only discusses the persuasiveness, supportability and
consistency of prior administrative medical findings from the reviewing
consultants. [ECF No. 9, PageID.44].

"Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).

A substantial evidence evaluation "does not permit a selective reading of the record."  *Espy v. Comm'r of Soc. Sec.*, No. 19-10305, 2019 WL 6273455, at *8 (E.D. Mich. Oct. 25, 2019), *adopted*, 2019 WL 6254652 (E.D. Mich. Nov. 22, 2019).  Although an "ALJ need not address every piece of evidence in the record, he does not fairly discharge his duties when he fails to meaningfully discuss significant contradictory portions of the record."  *Id.* (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) and *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013)).  "[T]he quality and volume of evidence not discussed by the ALJ may raise serious doubts about the supportability of the ALJ's RFC finding and overall conclusions."  *Roberts v. Colvin*, No. 13-14675, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (internal quotations omitted).  "In other words, where an ALJ's decision fails to meaningfully discuss or explain away significant contrary pieces of evidence, his

14

conclusions are not supported by 'substantial evidence.'" *Espy*, 2019 WL 6273455, at *8 (citing *Walker v. Comm'r of Soc. Sec.*, No. 12-11175, 2013 WL 239178, at *13 (E.D. Mich. May 31, 2013)).

The ALJ cursorily referred to Dr. Constantinou's initial evaluation, noting his findings of A.J.'s global developmental delay particularly affecting her language skills and emerging ADHD, but did not discuss the detailed report of her impairments and their impact on her development.  [ECF No. 9, PageID.143-146].  The decision makes no mention of the above-discussed evaluations from Dr. Gindlesperger, Maggie Schneider (a speech therapist) or Michelle Sova (an occupational therapist).  [ECF No. 9, PageID.38-50, 149-153, 229-231, 394-395].  Nor does it mention the evaluation of Jodie Saba, MA, CCC-SLP, who noted A.J. had a mixed receptive and expressive language delay, limited attention, use of some gestures but no pointing, and emerging but delayed social and play development.  [*Id.*, PageID.155-159].  The ALJ also failed to discuss A.J.'s Early On evaluation conducted by the Pontiac School District at age 24 months.  [ECF No. 9, PageID.229-231].  That evaluation said that, under the Peabody Developmental Motor Scale, A.J.'s grasping skills were at the 15 month range.  [*Id.*, PageID.229].  Her cognitive skills were solidly in the 12-15 month level and scattered up to the 20-23 month level.  [*Id.*,

PageID.230].  Under the Rossetti Infant-Toddler Language Scale, A.J.'s

receptive and expressive language skills scored at the 9-12 month level.

[*Id.*].

The decision does discuss the report from Dr. Van Horn's State

agency-requested evaluation of A.J. in May 2018.  [ECF No. 9,

PageID.593-598].  The ALJ notes that Dr. Van Horn "found some deficits in

social-emotional skills, language and general adaptive functions with

average range cognitive functions and motor skills."  [ECF No. 9,

PageID.43].  The decision includes Dr. Van Horn's conclusions that A.J.

"was too young" to assess her true cognitive and adaptive functioning and

that A.J. "had made a lot of improvement with strong family and school

support…"  [*Id.*].  But the decision omits the substantive portion of Dr. Van

Horn's report in which she detailed the result of the administered Bayley

Scales of Infant and Toddler Development-3 test.  [*Id.*, PageID.596-597].

Dr. Van Horn reported that A.J. scored "extremely low" in the areas of

language (.2 percentile), social-emotional (.1 percentile) and general

adaptive (<.1 percentile), and that those test results were "reliable for

interpretation."  [*Id.*].

In sum, the decision fails to reference or only selectively cites to

reports from at least five acceptable medical sources, all of which contain

germane evaluative evidence about A.J.'s impairments.  This failure to discuss significant contradictory portions of the record, especially the reported scores from standardized developmental assessments, undermines the supportability of the ALJ's overall conclusions.  *See Roberts,* 2015 WL 181658, at *10.

The ALJ's error is not harmless.  *See Kornecky*, 167 F. App'x 496, 507 (remand is not required unless there is reason to believe that it might lead to a different result); *see also, Anderson o/b/o M.C.B. v. Comm'r of Soc. Sec.,* 2019 WL 3574610, at *9 (N.D. Ohio Aug. 6, 2019).  The omitted evidence may show an extreme limitation in one domain, or a marked limitation in another domain, and if so, A.J.'s impairments would functionally equal the listings and she would be disabled.  § 416.926a(d) (marked limitations in two domains of functioning or an extreme limitation in one domain functionally equal the listings and establish disability).

Take A.J.'s language deficiencies, for example.  Some of the evidence omitted here assesses two-year-old A.J.'s language abilities as equivalent to a child anywhere from 9-12 months to 15-18 months.  [ECF No. 9, PageID.143-144, 230].  This evidence suggests a finding of marked or even extreme impairment in any domain relating to language.  *See* § 416.926a(e)(2)(ii) (if the claimant has not attained age 3, a "marked"

17

limitation generally is found if the claimant is functioning at a level that is more than one-half but not more than two-thirds of the claimant's chronological age when there are no standard scores from standardized tests in the record); § 416.926a(e)(3)(ii) (if the claimant has not attained age 3, an "extreme" limitation generally is found if the claimant is functioning at a level that is one-half of the claimant's chronological age or less when there are no standard scores from standardized tests in the record).

Language impairments must be assessed under both the interacting and relating to others and the acquiring and using information domains. *See Anderson,* 2019 WL 3574610, at *9.  In *Anderson*, the court found the ALJ's failure to address the claimant's speech and language impairments under the acquiring and using information domain particularly problematic because that domain focuses on the use of language to think about the world, to understand others and to express themselves.  *Id.*  The ALJ had committed reversible error.  "The ALJ's assessment of Plaintiff's functioning in this domain makes no mention of these speech and language impairments, making it impossible for the Court to determine whether he considered them."  *Id.* at *10.  The ALJ here made the same error.  The ALJ noted that A.J. was "not able to communicate independently" when

18

finding that she had a marked limitation in the interacting and relating with others domain, but the ALJ made no mention of A.J's language deficiencies when finding that she had less than a marked limitation in the acquiring and using information domain. [ECF No. 9, PageID.45, 47]. It is impossible for this Court to know if the ALJ considered A.J.'s language impairment for the acquiring and using information domain, and so the error is reversible. *Anderson,* 2019 WL 3574610, at *9.

Remand is further justified because A.J.'s standardized test scores relating to language and other abilities also hint at either marked or extreme limitations in functioning under one or more domains. Children of any age with a valid standardized test score between two and three standard deviations below the mean have a marked limitation in the ability or function tested, and those with a valid score three standard deviations or more below the mean have an extreme limitation in the ability or function tested. §§ 416.926a(e)(2)(iii) and (e)(3)(iii). A.J. had subtest scores on the Bayley Scales of Infant-Toddler Development-3 test at the .2 percentile, the .1 percentile and the <.1 percentile; these scores would seem to fall in either the marked or extreme limitation range for functions falling under both the acquiring and using information and the interacting and relating to others domains. [ECF No. 9, PageID.597].

19

Finally, many of the undiscussed evaluations refer to A.J.'s attention deficiencies.  [ECF No. 9, 143-146, 149-153, 230].  A marked limitation might be found if this evidence were considered under the attending and completing tasks domain.

For all these reasons, substantial evidence does not support the ALJ's conclusions that A.J. had less than marked limitation in the domains of acquiring and using information or attending and completing tasks.  The Court recommends remand for further consideration of the evidence discussed.

### III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Armstrong' Motion for Summary Judgment [ECF No. 11] be **GRANTED**, the Commissioner's Motion [ECF No. 12] be **DENIED**, and that this matter be **REMANDED** for further consideration consistent with this report and recommendation.

<u>s/Elizabeth A. Stafford</u>
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 9, 2020

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).

Each objection must be labeled as "Objection #1," "Objection #2," etc., and must specify precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, any non-objecting party must file a response to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be concise and proportionate in length and complexity to the objections, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2020.


<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager